# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2013 Term

FILED

November 13, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0151

STATE OF WEST VIRGINIA *ex rel.*
OCWEN LOAN SERVICING, LLC,
Petitioner

V.

THE HONORABLE CARRIE WEBSTER,
JUDGE OF THE CIRCUIT COURT OF
KANAWHA COUNTY, WEST VIRGINIA;
ROBERT L. CURRY AND TINA M. CURRY, INDIVIDUALLY,
AND ON BEHALF OF A SIMILARLY SITUATED CLASS,
Respondents

Petition for a Writ of Prohibition

WRIT GRANTED

Submitted: September 25, 2013
Filed: November 13, 2013

Mychal Sommer Schulz
Arie M. Spitz
Dinsmore & Shohl LLP
Charleston, West Virginia
Attorneys for the Petitioner

John W. Barrett
Jonathan Marshall
Michael B. Hissam
Bailey & Glasser LLP
Charleston, West Virginia
Attorneys for the Respondents

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.    "The purpose of the Federal Arbitration Act, 9 U.S.C. § 2, is for courts to treat arbitration agreements like any other contract.  The Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms."  Syllabus point 7, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam).

2.    "Under the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract."  Syllabus point 6, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam).

3.    "'A contract term is unenforceable if it is both procedurally and substantively unconscionable.  However, both need not be present to the same degree.

i

Courts should apply a "sliding scale" in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.' Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed.2d 42 (2012) (per curiam)]." Syllabus point 9, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012).

4. "'The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case.' Syllabus Point 12, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed.2d 42 (2012) (per curiam)]." Syllabus point 4, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012).

5. "'A contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the

substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person.' Syllabus Point 18, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, overruled in part on other grounds by *Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)]." Syllabus point 11, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012).

6. "Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Syllabus point 17, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam).

7.      "'Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party.  The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement.  Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.'  Syllabus Point 19, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)]."  Syllabus point 12, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012).

8.      "'As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement.'  Syl. Pt. 2, *Sally–Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986)."  Syllabus point 2, *State ex rel. Hicks v. Bailey*, 227 W. Va. 448, 711 S.E.2d 270 (2011).

9.      "In assessing whether a contract provision is substantively unconscionable, a court may consider whether the provision lacks mutuality of obligation.  If a provision creates a disparity in the rights of the contracting parties such that it is

one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable." Syllabus point 10, *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012).

10.     "A court in its equity powers is charged with the discretion to determine, on a case-by-case basis, whether a contract provision is so harsh and overly unfair that it should not be enforced under the doctrine of unconscionability." Syllabus point 9, *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012).

**Per Curiam:**

In this proceeding seeking a writ of prohibition, the petitioner, Ocwen Loan Servicing, LLC ("Ocwen"), asks this Court to prevent the circuit court of Kanawha County from enforcing its order that denied Ocwen's "Motion to Compel Individual Arbitration and Dismiss, or Alternatively, Stay Matter." In denying Ocwen's motion, the circuit court first concluded that the arbitration agreement was unenforceable under a provision of the Dodd-Frank Act that proscribes the inclusion of arbitration agreements in connection with residential mortgage loans. *See* 15 U.S.C. § 1639c(e)(1) (2010) (Cum. Ann. Pocket Pt. 2013). Additionally, the circuit court found the arbitration agreement to be both procedurally and substantively unconscionable on various grounds. After considering the briefs and appendix record submitted on appeal, oral arguments presented by the parties and the relevant law, we conclude that the Dodd-Frank Act does not apply to a mortgage loan executed prior to its enactment. In addition, we find the arbitration agreement is neither procedurally nor substantively unconscionable. For these reasons, we grant the requested writ.

# I.

## FACTUAL AND PROCEDURAL HISTORY

In October 2006, Respondents Robert and Tina Curry ("the Currys") obtained an adjustable rate mortgage loan from Saxon Mortgage, Inc. In connection with the loan, the

1

Currys executed a deed of trust on the real property being purchased and separately executed an arbitration rider. The arbitration rider stated that it was "incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed."

Petitioner Ocwen Loan Servicing, LLC (hereinafter "Ocwen"), ultimately began servicing the Currys' home mortgage loan. After the Currys apparently defaulted on the loan, Ocwen assessed a number of fees including: (1) a "statutory mailings" fee of $210.94; (2) a "skip trace/search" charge of $50.00; (3) an "FC thru service" charge of $550.00; and (4) a "title report fee" of $300.00.

In November 2011, the Currys filed a complaint against Ocwen in the circuit court of Kanawha County alleging violations of the West Virginia Consumer Credit and Protection Act. The action was brought on the Currys' own behalf and as a putative class action.[1] Ocwen responded by filing a "Motion to Compel Individual Arbitration and Dismiss, or Alternatively, Stay Matter" in January 2012. The Currys filed an opposing motion and Ocwen filed a reply. Thereafter, the circuit court held a hearing in February

[1]In that action, the Currys asserted three claims related to Ocwen's assessment of allegedly unlawful fees in connection with its servicing of loans. First, the Currys claim that Ocwen threatened to charge debt-collection expenses in violation of West Virginia Code §§ 46A-2-115(s), 127(g) and 128(c). Second, they claim that Ocwen falsely represented the amount of its claims against the Currys and others in violation of West Virginia Code § 46A-2-127(d). And finally, they claim that Ocwen attempted to collect attorney's fees in violation of West Virginia Code § 46A-2-127(g). The relief sought by the Currys includes civil penalties, actual damages, compensatory damages, interest, and attorney's fees and costs.

2

2012. On January 7, 2013, the circuit court entered an order denying Ocwen's motion based upon that court's conclusions that the arbitration agreement is unenforceable under the Dodd-Frank Act or, alternatively, that it is unconscionable under West Virginia law. Ocwen then filed the instant petition for writ of prohibition on February 20, 2013, seeking to prevent enforcement of the circuit court's January 7, 2013 order. On April 10, 2013, this Court issued a rule to show cause. We now grant the requested writ.

## II.

## STANDARD OF REVIEW

Ocwen comes to this Court seeking a writ of prohibition to prevent the circuit court from enforcing an order that denied Ocwen's motion to compel arbitration. With regard to the extraordinary remedy of a writ of prohibition, this Court has explained that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code, 53-1-1." Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). We have, however, observed that "[a] petition for a writ of prohibition is an appropriate method to obtain review by this Court of a circuit court's decision to deny or compel arbitration." *State ex rel. Johnson Controls, Inc. v. Tucker*, 229 W. Va. 486, 492, 729 S.E.2d 808, 814 (2012).[2] Five factors will be considered

_____

[2]We recently have held that "[a]n order denying a motion to compel arbitration
(continued...)

3

in a case such as this where it is alleged that the circuit court exceeded its legitimate powers:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). Our consideration of this original jurisdiction proceeding will be guided by the foregoing principals.

## III.

## DISCUSSION

The two grounds upon which Ocwen urges this Court to grant the requested

---

[2](...continued)
is an interlocutory ruling which is subject to immediate appeal under the collateral order doctrine." Syl. pt. 1, *Credit Acceptance Corp. v. Front*, 231 W. Va. 518, 745 S.E.2d 556 (2013).

writ of prohibition are that the circuit court erroneously applied the Dodd-Frank Act to the Currys' mortgage, and that the circuit court wrongly found that the arbitration agreement was unconscionable. We address each issue in turn.

## A. Applicability of Dodd-Frank Act

In denying Ocwen's Motion to Compel Arbitration, the circuit court ruled, in part, that the arbitration agreement was unenforceable under the Dodd-Frank Act. The Dodd-Frank Act provides, in relevant part, that:

> No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling any claims arising out of the transaction.

15 U.S.C. § 1639c(e)(1).

The first issue before this Court in determining whether to grant prohibition is whether the Dodd-Frank Act applies to invalidate an arbitration agreement executed in 2006, when the general effective date of the Act was July 22, 2010, and some provisions did not become effective until a later date.[3]

_____

[3]The circuit court found that the above quoted provision of the Dodd-Frank Act took effect on July 22, 2010, the general effective date of the Dodd-Frank Act. In this regard, the circuit court explained:

(continued...)

5

³(...continued)
The Dodd-Frank Act took effect on July 22, 2010. *See* Pub. L. No. 111-203, 124 Stat. 1390, § 4 (general effective date). Section 1414 of the Dodd-Frank Act – the provision banning mandatory arbitration clauses in residential home loans – was part of Title XIV of the Act, which contains several amendments to the Truth in Lending Act. Title XIV has a separate effective date provision, § 1400(c), that only applies to those portions of Title XIV that require administrative regulations to be implemented. This special effective date provision reflects the fact that Title XIV envisions a broad new swath of regulations, including regulations issued by a new agency created by the Dodd-Frank Act, the Consumer Finance Protection Bureau (CFPB). *See* Congressional Research Service, *Rulemaking Requirements and Authorities in the Dodd-Frank Wall Street Reform and Consumer Protection Act* at 54-57, 85-87 (Nov. 3, 2010) (listing 28 different sections in Title XIV that either require or permit regulations). Section 1414 – the provision at issue here – is a notable exception because it does not require any regulations to be promulgated. In fact, unlike the 28 different sections in Title XIV that mandate or discuss rulemaking, §1414 *never* mentions any regulations. The Court therefore concludes that §1414's effective date is governed by the Dodd-Frank Act's general effective date, not §1400(c). Section 1414 thus took effect on July 22, 2010.

Ocwen, on the other hand, argues that the relevant provision of the Dodd-Frank Act did not become effective until January 21, 2013, at the earliest. In this regard, Ocwen opines that

> [s]ection 1414 of the Dodd-Frank Act was enacted as part of Title XIV of the Act. Title XIV, entitled the Mortgage Reform and Anti-Predatory Lending Act (*see* Dodd-Frank Act § 1400), contains an express provision establishing when its amendments become effective. Subsections (c)(2) and (c)(3) of Section 1400 specifically provide as follows:

(continued...)

6

[3](...continued)

> (c) REGULATIONS; EFFECTIVE DATE. . .
>
> . . . .
>
> (2) EFFECTIVE DATE ESTABLISHED BY RULE-Except as provided in paragraph (3), a section, or provision thereof, of this title *shall take effect on the date on which the final regulations implementing such section, or provision, take effect.*
>
> (3) EFFECTIVE DATE -A section of this title for which regulations have not been issued on the date that is 18 months after the *designated transfer date* shall take effect on such date.

*Id*. (emphasis added).

> The "designated transfer date" set forth in the Act (*see* Dodd-Frank Act § 1062) was July 21, 2011. *See* 75 Fed. Reg. 57252,57,253 (Sept. 20, 2010). As such, the provisions of Section 1414 of the Dodd-Frank Act (and all of Title XIV) were scheduled [to] take effect on one of two possible dates: (1) the date of "implementation" pursuant to the issuance of "final regulations;" or (2) if no regulations are issued, the date "18 months after the designated transfer date," or January 21, 2013. *See* Dodd-Frank Act § 1400(c). As of the date of the entry of the Circuit Court's Order, no final regulations implementing Section 1414's pre-dispute arbitration agreement provision had been promulgated. As such, Section 1414's provision regarding predispute arbitration agreements did not become effective until January 21, 2013, at the earliest.

(Footnote omitted). Because of the manner in which we resolve this issue, it is not necessary for us to determine the specific effective date of Section 1414 of the Dodd-Frank Act, which is codified at 15 U.S.C. § 1639c.

Petitioner Ocwen argues that the Dodd-Frank Act does not preclude enforcement of arbitration agreements entered into prior to its enactment. Respondents Currys argue that the circuit court correctly applied the Dodd-Frank Act to find the arbitration agreement they executed in 2006 was unenforceable.

The United States Supreme Court has directed generally that "a court must apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 249, 114 S. Ct. 1483, 1488-89, 128 L. Ed. 2d 229 (1994) (quoting *Bradley v. School Bd. of Richmond*, 416 U.S. 696, 711, 94 S. Ct. 2006, 2016, 40 L. Ed. 2d 476 (1974) (internal quotations and additional citation omitted)).

On the other hand, the Supreme Court has further declared that "retroactivity is not favored in the law, and . . . congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Landgraf*, 511 U.S. at 264, 114 S. Ct. at 1496, 128 L. Ed. 2d 229 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S. Ct. 468, 471, 102 L. Ed.2d 493 (1988) (internal quotations omitted)). On the topic of retroactivity, the Supreme Court has explained

> the presumption against retroactive legislation is deeply rooted
> in our jurisprudence, and embodies a legal doctrine centuries
> older than our Republic. Elementary considerations of fairness
> dictate that individuals should have an opportunity to know what

8

the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Kaiser*, 494 U.S., at 855, 110 S. Ct., at 1586 (SCALIA, J., concurring). In a free, dynamic society, creativity in both commercial and artistic endeavors is fostered by a rule of law that gives people confidence about the legal consequences of their actions.

It is therefore not surprising that the antiretroactivity principle finds expression in several provisions of our Constitution. The Ex Post Facto Clause flatly prohibits retroactive application of penal legislation. *Article I, § 10, cl. 1, prohibits States from passing another type of retroactive legislation, laws* "*impairing the Obligation of Contracts.*" The Fifth Amendment's Takings Clause prevents the Legislature (and other government actors) from depriving private persons of vested property rights except for a "public use" and upon payment of "just compensation." The prohibitions on "Bills of Attainder" in Art. I, §§ 9-10, prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct*. See, e.g., United States v. Brown*, 381 U.S. 437, 456-462, 85 S. Ct. 1707, 1719-1722, 14 L. Ed. 2d 484 (1965). The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause "may not suffice" to warrant its retroactive application. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17, 96 S. Ct. 2882, 2893, 49 L. Ed.2d 752 (1976).

*Landgraf*, 511 U.S. at 265-66, 114 S. Ct. at 1497, 128 L. Ed. 2d 229 (footnotes omitted) (emphasis added).

The *Landgraf* Court went on to note that

[t]he Constitution's restrictions, of course, are of limited

9

scope. Absent a violation of one of those specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope. Retroactivity provisions often serve entirely benign and legitimate purposes, whether to respond to emergencies, to correct mistakes, to prevent circumvention of a new statute in the interval immediately preceding its passage, or simply to give comprehensive effect to a new law Congress considers salutary. However, a requirement that Congress first make its intention clear helps ensure that Congress itself has determined that the benefits of retroactivity outweigh the potential for disruption or unfairness.

*Landgraf*, 511 U.S. at 267-68, 114 S. Ct. at 1498, 128 L. Ed. 2d 229 (footnote omitted).[4]

---

[4]The *Landgraf* Court further explained with regard to retroactivity that

[a] statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, *see Republic Nat. Bank of Miami v. United States*, 506 U.S. 80, 100, 113 S. Ct. 554, 565–566, 121 L. Ed. 2d 474 (1992) (THOMAS, J., concurring in part and concurring in judgment), or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have "sound . . . instinct[s]," *see Danforth v. Groton Water Co.*, 178 Mass. 472, 476, 59 N.E. 1033, 1034 (1901) (Holmes, J.), and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

*Landgraf*, 511 U.S. at 269-70, 114 S. Ct. at 1499, 128 L. Ed. 2d 229 (footnote omitted).

(continued...)

Notably, there is nothing within the Dodd-Frank Act expressly stating that 15 U.S.C. § 1639c(e)(1) is to be given retroactive application. *See Pezza v. Investors Capital Corp.*, 767 F. Supp. 2d 225, 231 (D. Mass. 2011) ("Equally unclear is whether Congress intended Section 1414 of the Act 'ADDITIONAL STANDARDS AND REQUIREMENTS' to be applied retroactively. Section 1414 amended Section 129C of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, by restricting the use of predispute arbitration provisions for certain residential mortgage loans and extensions of credit[.]").

Nevertheless,

> [e]ven absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive. . . .
>
> We have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed. . . . Application of a new jurisdictional rule usually "takes away no substantive right but simply changes the tribunal that is to hear the case." *Hallowell*, 239 U.S., at 508, 36 S. Ct., at 202. Present law normally governs in such situations because jurisdictional statutes "speak to the power of the court rather than to the rights or obligations of the parties," *Republic Nat. Bank of Miami*, 506 U.S., at 100, 113 S. Ct., at 565 (THOMAS, J., concurring).

*Landgraf*, 511 U.S. at 273-74, 114 S. Ct. at 1501, 128 L. Ed. 2d 229.

_____

[4](...continued)

11

Acknowledging the apparent conflict between applying jurisdictional rules retrospectively and the general rule against retroactive application of a statute in the absence of clearly expressed congressional intent, the Supreme Court elaborated that

> In *Bruner* [v. United States, 343 U.S. 112, 117 n.8, 72 S. Ct. 581, 584 n.8, 96 L. Ed. 786 (1952)], we specifically noted:
>
>> "This jurisdictional rule does not affect the general principle that a statute is not to be given retroactive effect unless such construction is required by explicit language or by necessary implication. Compare *United States v. St. Louis, S.F. & T.R. Co.*, 270 U.S. 1, 3 [46 S. Ct. 182, 183, 70 L. Ed. 435] (1926), with *Smallwood v. Gallardo*, 275 U.S. 56, 61 [48 S. Ct. 23, 23–24, 72 L. Ed. 152] (1927)." 343 U.S., at 117, n. 8, 72 S. Ct., at 584, n. 8.

*Landgraf*, 511 U.S. at 274 n.27, 114 S. Ct. at 1502 n.27, 128 L. Ed. 2d 229.

> In summary, the Supreme Court reiterated that
>
>> [w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf*, 511 U.S. at 279-80, 114 S. Ct. at 1504-05, 128 L. Ed. 2d 229.

12

Subsequent to *Landgraf*, the Supreme Court succinctly stated the relevant test

for determining whether a statute may be applied retroactively as follows:

> This Court has worked out a sequence of analysis when an objection is made to applying a particular statute said to affect a vested right or to impose some burden on the basis of an act or event preceding the statute's enactment. We first look to "whether Congress has expressly prescribed the statute's proper reach," *Landgraf*, *supra*, at 280, 114 S. Ct. 1483, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying "our normal rules of construction," *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 138 L. Ed.2d 481 (1997). If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of "affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment," *Landgraf*, *supra*, at 278, 114 S. Ct. 1483; *see also Lindh*, *supra*, at 326, 117 S. Ct. 2059. If the answer is yes, we then apply the presumption against retroactivity by construing the statute as inapplicable to the event or act in question owing to the "absen[ce of] a clear indication from Congress that it intended such a result." *INS v. St. Cyr*, 533 U.S. 289, 316, 121 S. Ct. 2271, 150 L. Ed.2d 347 (2001); *see Martin v. Hadix*, 527 U.S. 343, 352, 119 S. Ct. 1998, 144 L. Ed. 2d 347 (1999) (quoting *Landgraf*, *supra*, at 280, 114 S. Ct. 1483).

*Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37-38, 126 S. Ct. 2422, 2428, 165 L. Ed. 2d 323

(2006).


Because the Dodd-Frank Act neither expressly or impliedly states that 15

U.S.C. § 1639c(e)(1) is to be given retroactive application, we must begin our analysis with

the second query. Therefore, "we ask whether applying the statute to the person objecting

13

would have a retroactive consequence in the disfavored sense of 'affecting substantive rights, liabilities, or duties [on the basis of] conduct arising before [its] enactment[.]'" *Fernandez-Vargas*, 548 U.S. at 37, 126 S. Ct. at 2428, 165 L. Ed. 2d 323 (quoting *Landgraf*, 511 U.S. at 278, 114 S. Ct. at 1504, 128 L. Ed. 2d 229; and citing *Lindh v. Murphy*, 521 U.S. 320, 326, 117 S. Ct. 2059, 2063, 138 L. Ed.2d 481).

While only one court has addressed the issue of whether 15 U.S.C. § 1639c(e) applies retroactively,[5] courts have addressed the retroactivity of other Dodd-Frank Act provisions prohibiting arbitration clauses. One court very recently observed that "[t]here is a split in authority among the district courts that have considered retroactive application of the Dodd-Frank amendments governing arbitrability." *Weller v. HSBC Mortg. Servs., Inc.*, Civil No. 13-cv-00185-REB-MJW, 2013 WL 4882758, at *3-4 (D. Colo. Sept. 11, 2013).

Two district courts have addressed whether to retroactively apply a provision of the Dodd-Frank Act prohibiting predispute arbitration agreements in the context of whistleblower protection,[6] and have concluded that the provision did not undermine

---

[5]*See Weller v. HSBC Mortg. Servs., Inc.*, Civil No. 13-cv-00185-REB-MJW, 2013 WL 4882758 (D. Colo. Sept. 11, 2013).

[6]The Dodd-Frank Act

amended the whistleblower protections of the Sarbanes-Oxely Corporate and Criminal Fraud Accountability Act of 2002 to

(continued...)

14

substantive rights, but was merely jurisdictional in that it required the parties to submit their dispute to an arbitral forum rather than a judicial forum. *See Wong v. CKX, Inc.*, 890 F. Supp. 2d 411 (S.D.N.Y. 2012); *Pezza v. Investors Capital Corp.*, 767 F.Supp.2d 225 (D. Mass. 2011). The Circuit Court of Kanawha County relied upon these cases in finding that the arbitration agreement was unenforceable under the Dodd-Frank Act.

The *Pezza* Court observed that

> The difficulty here is that Section 922 of the Act appears to fall, at least arguably, within the scope of two competing types of statutes referred to in *Landgraf*. The first type involves statutes "affecting contractual or property rights." *Id*. at 271, 114 S. Ct. 1483. Section 922 of the Act voids contractual arbitration provisions agreed upon by the parties. An agreement to arbitrate is treated like any other contract. *See* 9 U.S.C. § 2 ("an agreement in writing to submit to arbitration an existing controversy arising out of . . . a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The Supreme Court has found this is "[t]he largest category of cases in which [it] ha[s] applied the presumption against statutory

---

[6](...continued)
provide that "[t]he rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement" and concomitantly that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under [the Sarbanes-Oxley whistleblower protection provision]." 124 Stat. at 1848, codified at 18 U.S.C. § 1514A(e)(1) & (2). *See also Wong v. CKX, Inc.*, 890 F. Supp.2d 411, 421 (S.D.N.Y.2012).

*Weller*, 2013 WL 4882758, at *2 n.6.

retroactivity," on the ground that this type of statute relates to "matters in which predictability and stability are of prime importance." *Landgraf*, 511 U.S. at 271, 114 S. Ct. 1483.

. . . .

The second type of statute relevant for purposes of this analysis are those "conferring or ousting jurisdiction." *Landgraf*, 511 U.S. at 274, 114 S. Ct. 1483. Section 922 of the Act confers, by voiding arbitration agreements, jurisdiction to the courts, rather than to a Financial Industry Regulatory Authority ("FINRA") arbitration panel. The Supreme Court has recognized that, even absent specific legislative authorization, jurisdictional statutes may be applied in suits arising before their enactment without raising concerns about retroactivity. *Id*. The rationale is that this type of statute "takes away no substantive right but simply changes the tribunal that is to hear the case." *Hamdan v. Rumsfeld*, 548 U.S. 557, 577, 126 S. Ct. 2749, 165 L. Ed. 2d 723 (2006) (quoting *Hallowell v. Commons*, 239 U.S. 506, 508, 36 S. Ct. 202, 60 L. Ed. 409 (1916)). In other words, present law governs in such a case because statutes conferring or ousting jurisdiction "speak to the power of the court rather than to the rights or obligations of the parties." *Landgraf*, 511 U.S. at 274, 114 S. Ct. 1483 (quoting *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 100, 113 S. Ct. 554, 121 L. Ed. 2d 474 (1992)).

*Pezza*, 67 F. Supp. 2d at 232-33.

The *Pezza* court further recognized that

Courts have refused to apply retroactively state statutes voiding certain arbitration provisions on the basis that such statutes affected contractual rights and therefore has retroactive effect. *See Andrews v. Commoloco, Inc.*, No.2003/0066, 2009 WL 2413684, at *2 (D. VI. Aug. 4, 2009) (refusing to apply retroactively a Virgin Islands statute that rendered unenforceable contractual waivers unless made knowingly and voluntarily

16

because such "statute would have retroactive effect," in particular with respect to the enforceability of the arbitration provision containing such waiver); *M.A. Mortenson/Meyne Co. v. Edward E. Gillen Co.*, No. 03-5135, 2003 WL 23024511, at *3 (D. Minn. Dec. 17, 2003) (declining to apply retroactively Illinois statute invalidating arbitration provisions in building and construction contracts because this statute "substantively affects a contract term that the parties expressly agreed to" and "thus directly impairs the parties' substantive right to contract.").

*Pezza*, 767 F. Supp. 2d at 233. Nevertheless, the *Pezza* court ultimately concluded that

> [w]hile Section 922 affects the validity of the arbitration clause, a contractual term agreed upon by the parties, I am of the view that this section principally concerns the type of jurisdictional statute envisioned in *Landgraf*. As the Supreme Court held, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)) (alteration in original); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 486, 109 S. Ct. 1917, 104 L. Ed. 2d 526 (1989) ("resort to the arbitration process does not inherently undermine any of the substantive rights afforded to petitioners under the Securities Act."); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 205-06 (2d Cir.1999) ("the substantive rights found in the statute are not in any way diminished by our holding that arbitration may be compelled in this case, since only the forum–an arbitral rather than a judicial one–is affected, and plaintiff's rights may be as fully vindicated in the former as in the latter."); *St. Paul Fire & Marine Ins. Co. v. Employers Reinsurance Corp.*, 919 F. Supp. 133, 139 (S.D.N.Y.1996) (applying retroactively Kansas Arbitration Act which provides that arbitration clauses in reinsurance contracts are valid, enforceable, and irrevocable because this statute "affects only a procedural right" and "the parties' substantive rights remain amply protected."); *Pitter v. Prudential Life Ins.*

> *Co. of Am.*, 906 F. Supp. 130, 134 (E.D.N.Y.1995) (holding that the 1993 amendments to the NASD Code imposing mandatory arbitration of employment disputes "deal, after all, only with the forum where employment claims will be heard. They do not alter the substantive rights conferred by Congress on employees.").
>
> The parties do not claim that a different substantive result will obtain merely because Pezza's claim will be heard by a court rather than by a FINRA arbitration panel. Consequently, I conclude that Section 922 of the Act should also be applied to conduct that arose prior to its enactment.

*Pezza*, 767 F. Supp. 2d at 233-34. *See also Wong*, 890 F. Supp. 2d at 422-23 (finding Dodd-Frank Act applied to bar arbitration clause in employment contract executed in 2006 based upon finding that "[t]he ban on the arbitration of Sarbanes–Oxley whistleblower claims primarily affects the jurisdiction of the court to hear the substantive claim. Accordingly, the statute at issue here more appropriately falls within the [category of statute that confers or ousts jurisdiction] because it–despite altering a provision of a contract–'principally concerns the type of jurisdictional statute envisioned in *Landgraf*,' *Pezza*, 767 F. Supp. 2d at 233, and does not affect the substantive rights of either party.").

Other courts have reached the opposite conclusion, finding that an arbitration provision may not be applied retroactively because

> arbitration is primarily a contractual matter governed by the law of contracts . . . . They thus have concluded that the right to insist on arbitration is not just a matter of where the claims may be heard but a question of vested, contractual rights, which may not be retroactively withdrawn absent clear congressional intent

18

to that effect. . . .

*Weller*, 2013 WL 4882758, at *4 (citing *Blackwell v. Bank of Am. Corp.*, No. 7:11-cv-02475-JMC, 2012 WL 1229675 (D.S.C. April 12, 2012), *incorporating* No. 7:11-2475-JMC-KFM, 2012 WL 1229673 (D.S.C. March 22, 2012) (Rep't of Mag. Judge); and *Henderson v. Masco Framing Corp.*, No. 7:11-cv-02475-JMC, 2011 WL 3022535 (D. Nev. July 22, 2011)).

Similar to the case *sub judice*, the United States District Court in *Weller* was asked to decide whether a provision of the Dodd-Frank Act[7] should be applied retroactively to bar enforcement of an arbitration agreement executed in 2006 in connection with a residential home mortgage.  Criticizing the *Pezza* and *Wong* courts as having "too blithely disregard[ed] the presumption against retroactivity and the need for predictability and stability attendant on preserving established contractual expectations," *Weller*, 2013 WL 4882758, at *4, the *Weller* court opined that the decisions reached by the *Pezza* and *Wong* courts

> disregard the very essence of the substantive/jurisdictional distinction as described by the Supreme Court itself: that "jurisdictional statutes speak to the power of the court rather than to the rights or obligations of the parties."  *Id*. at 1502 (citation and internal quotation marks omitted).  An arbitration agreement creates a right, one that under the FAA is "irrevocable," *see* 9 U.S.C. § 2, and one which the Supreme Court has insisted by placed on equal footing with other contract rights, *see AT & T Mobility LLC v. Concepcion*, ___ U.S. ___,

---

[7]The *Weller* court examined 15 U.S.C. § 1639c(e)(3), whereas this Court is asked to resolve whether 15 U.S.C. § 1639c(e)(1) may be applied retroactively.

19

131 S. Ct. 1740, 1745, 179 L. Ed. 2d 742 (2011) ("[C]ourts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms.").

*Weller*, 2013 WL 4882758, at*4. Accordingly, the *Weller* court found "that the Dodd-Frank amendments, codified at 15 U.S.C. § 1639c(e)(3), do not operate retroactively to nullify Mr. Weller's arbitration agreement." *Id.*, at *5. *See also Blackwell v. Bank of Am. Corp.*, No. 7:11-2475-JMC-KFM, 2012 WL 1229673, at *4 (D.S.C. March 22, 2012) (Report of Mag. Judge) (rejecting *Pezza* analysis and concluding that "the Dodd-Frank Act amendments do not apply retroactively to the plaintiff's [Sarbanes-Oxley Act] claim), *incorporated by* No. 7:11-cv-02475-JMC, 2012 WL 1229675 (D.S.C. April 12, 2012). Another court addressing this issue similarly reasoned that:

> this court notes three important points regarding the retroactivity of congressional statutes. First, as has been mentioned above, "[r]etroactivity is not favored in the law." *Landgraf*, 511 U.S. at 264 (quoting *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988)). Second, for this reason, there is typically a "presumption against statutory retroactivity." *Id.* at 270. Third, "[t]he largest category of cases in which . . . the presumption against statutory retroactivity has [been applied] involve[s] new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." *Id.* at 271. Supreme Court precedent has explicitly indicated on numerous occasions that the right of parties to agree to arbitration is a contractual matter governed by contract law. *See AT & T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1752–53 (2011); *Rent-A-Ctr., W., Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).
>
> After reviewing the relevant case law, this court finds that the Dodd-Frank Act's SOX [(Sarbanes-Oxely)] provisions are not retroactive. At the time Henderson and Masco agreed to

the dispute resolution policy in 2007, they had the right to contract for the arbitration of SOX claims. *See Guyden v. Aetna, Inc.*, 544 F.3d 376, 384 (2d Cir.2008); *Boss v. Salomon Smith Barney Inc.*, 263 F.Supp.2d 684, 685 (S.D.N.Y. 2003). Further, Henderson and Masco's right to arbitrate SOX claims was reflected in their agreement, as the dispute resolution policy states that the arbitration provisions apply to "violation[s] of any federal . . . law." Doc. # 9, Exhibit B. The court does not see, therefore, how a retroactive revocation of the parties' right to arbitrate SOX claims would not "impair rights [the parties] possessed when [they] acted." *Landgraf* [*v. USI Film Prods.*], 511 U.S. at 280, [114 S. Ct. at 1505, 128 L. Ed. 2d 229]. A retroactive application of Dodd-Frank's SOX provisions would not merely affect the jurisdictional location in which such claims could be brought; it would fundamentally interfere with the parties' contractual rights and would impair the "predictability and stability" of their earlier agreement. *Id*. at 271. For these reasons, the court concludes that Henderson's right to arbitrate his SOX claim is not retroactively barred. Accordingly, the court finds that Henderson's SOX claim falls within the provisions of a valid arbitration agreement, and, recognizing the FAA's mandatory enforcement of such valid arbitration agreements, the court shall grant Henderson's motion to compel arbitration.

*Henderson v. Masco Framing Corp*., No. 7:11-cv-02475-JMC, 2011 WL 3022535, at \*4 (D. Nev. July 22, 2011).

Based upon the foregoing discussion, this Court is of the opinion that the more reasoned approach is that which acknowledges arbitration as primarily a contractual matter and that retroactive application of the Dodd-Frank Act to render a properly executed arbitration agreement unenforceable would "fundamentally interfere with the parties' contractual rights and would impair the 'predictability and stability' of their earlier

21

agreement."[8]   *Henderson v. Masco Framing Corp.*, No. 7:11-cv-02475-JMC, 2011 WL

3022535, at \*4 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. at 271, 114 S. Ct. at 1500,

128 L. Ed. 2d 229).  Accordingly, we conclude that retroactive application of the Dodd-Frank

Act to the arbitration agreement at issue in this case would improperly impair the parties'

fundamental right to contract.  The circuit court's conclusion to the contrary was in error.

## B.  *Enforceability of Arbitration Agreement*

In finding the arbitration agreement is not enforceable under state law, the

circuit court ruled that the agreement was both procedurally and substantively

unconscionable.[9]  Ocwen argues that the circuit court's determinations were incorrect and,

---

[8]During oral argument, the Currys directed this Court's attention to *Gordon v. Pete's Auto Service of Denbigh, Inc.,* 637 F.3d 545 (4th Cir. 2011), in support of their position that the Dodd-Frank Act should be applied to void the arbitration agreement to which they agreed by contract. *Gordon* involved an amendment to the Servicemembers Civil Relief Act that granted servicemembers a private right of action.  Because *Gordon* does not address contract rights, we find the opinion does not aid in our decision of this case.

[9]This Court has established that

> [w]hen a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.

Syl. pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010).

therefore, enforcement of the order should be prohibited. The Currys assert that the circuit court did not err in this regard.

The arbitration agreement at issue in this case is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-14 (hereinafter "the FAA"). The FAA requires that a court interpreting an arbitration agreement apply the same principals that would be applied to any other contract:

> The purpose of the Federal Arbitration Act, 9 U.S.C. § 2, is for courts to treat arbitration agreements like any other contract. The Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms.

Syl. pt. 7, *Brown v. Genesis Healthcare Corp*., 228 W. Va. 646, 724 S.E.2d 250 (2011) ("*Brown I*"), *overruled on other grounds by Marmet Health Care Ctr., Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam). Thus,

> [u]nder the Federal Arbitration Act, 9 U.S.C. § 2, a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract.

Syl. pt. 6, *Brown I*, 228 W. Va. 646, 724 S.E.2d 250. In keeping with these directives, West Virginia courts apply the following contract standard when evaluating an arbitration agreement for unconscionability:

> "A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a 'sliding scale' in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa." Syllabus Point 20, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed.2d 42 (2012) (per curiam)].

Syl. pt. 9, *Brown v. Genesis Healthcare Corp.*, 229 W. Va. 382, 729 S.E.2d 217 (2012) ("*Brown II*"). We will address separately whether the circuit court erred in its determination that the instant arbitration agreement is both procedurally and substantively unconscionable. In doing so, we are mindful that

> "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case." Syllabus Point 12, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed.2d 42 (2012) (per curiam)].

Syl. pt. 4, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217.

**1. Procedural Unconscionability**. The circuit court based its finding of procedural unconscionability on the following rationale:

[T]he Plaintiffs are unsophisticated consumers, with little knowledge of financial matters and who were not represented by counsel when they signed several pages of legal documents in connection with their loan transaction. Ocwen, by contrast, is a large national corporate loan servicer. This situation is nearly identical to the circumstances deemed procedurally unconscionable in *Arnold v. United Cos. Lending Corp.*, [204 W. Va. 229,] 511 S.E.2d 854 [(1998), *overruled in part by Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012)], where the court found that the relative position of the parties, a national corporate lender on one side and an unsophisticated consumer on the other, were "grossly unequal." *Id*. at 861; *see also Richmond Am. Homes*, 717 S.E.2d at 922 (affirming Circuit Court's finding of procedural unconscionability where lender was a large national corporation with legal counsel advising it in the drafting of its contracts). In addition, the fact that the arbitration agreement contains boilerplate language describing it as "voluntary" does not change the procedural unconscionability analysis. The inclusion of such language in a form contract does not detract from the fact that [it] nevertheless [is] a contract of adhesion–one drafted by the part of superior strength and presented to consumers who have "little or no opportunity to alter the substantive terms." *Id*. at 921 (internal quotation marks omitted).

Ocwen argues that the circuit court erred in finding the arbitration agreement is procedurally unconscionable. In support of this argument, Ocwen contends that the agreement is not procedurally unconscionable because it is not a contract of adhesion. Ocwen argues that the arbitration agreement was voluntary, as evidenced by the following statement that advised the Currys that they were free to reject arbitration: "THIS IS A VOLUNTARY ARBITRATION AGREEMENT. IF YOU DECLINE TO SIGN THIS ARBITRATION AGREEMENT, LENDER WILL NOT REFUSE TO COMPLETE THE

25

LOAN TRANSACTION BECAUSE OF YOUR DECISION." In the alternative, Ocwen argues that even if it is determined that the arbitration agreement is a contract of adhesion, it is not procedurally unconscionable. According to Ocwen, there is no evidence to support the circuit court's conclusions that the Currys were unsophisticated consumers who had little knowledge of financial matters and were not represented by counsel. Ocwen postulates that these conclusions were mere supposition by the circuit court. The Currys, arguing in favor of the circuit court's finding of procedural unconscionability, merely restate the circuit court's conclusions regarding the Currys lack of sophistication, financial knowledge and legal representation. In addition, the Currys point out that

> "[a] contract of adhesion is one drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person." Syllabus Point 18, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, overruled in part on other grounds by *Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)].

Syl. pt. 11, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217.

> We first note that

> [p]rocedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability

26

involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

Syl. pt. 17, *Brown I*, 228 W. Va. 646, 724 S.E.2d 250. Furthermore, insofar as the Currys claim the arbitration contract is one of adhesion, we note that, while contracts of adhesion require greater scrutiny, they are not *per se* unconscionable:

"[f]inding that there is an adhesion contract is the beginning point for analysis, not the end of it; what courts aim at doing is distinguishing good adhesion contracts which should be enforced from bad adhesion contracts which should not." *State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 557, 567 S.E.2d 265, 273 (2002) (quoting *American Food Management, Inc. v. Henson*, 105 Ill. App. 3d 141, 61 Ill. Dec. 122, 434 N.E.2d 59, 62–63 (1982)), *cert. denied*, 537 U.S. 1087, 123 S. Ct. 695, 154 L. Ed. 2d 631 (2002).

*Grayiel v. Appalachian Energy Partners 2001-D, LLP*, 230 W. Va. 91, 103, 736 S.E.2d 91, 103 (2012).

Based upon our examination of the arbitration agreement, we find no basis upon which to conclude that it is procedurally unconscionable. The arbitration agreement contained a plainly worded statement, placed conspicuously above the signature line in all caps, that advised the Currys that they could reject the arbitration agreement and the lender

27

would not refuse to complete their loan due to such refusal. Furthermore, in response to Ocwen's argument that the circuit court's conclusions pertaining to procedural unconscionability were not supported by the record, the Currys have failed to direct this Court's attention to any evidence in the record to support the circuit court's finding that they lacked sophistication and financial knowledge to a degree that rendered the contract unenforceable. Finally, the Currys have cited no authority to support the proposition that a consumer executing an arbitration agreement in connection with a mortgage loan must be represented by a lawyer for the contract to be enforceable. For these reasons, we find the circuit court erred in refusing to enforce the arbitration agreement on the ground that it was procedurally unconscionable.

**2. Substantive Unconscionability.** The circuit court additionally concluded that the contract was substantively unconscionable.

> "Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Syllabus Point 19, *Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011)[, *overruled in part on other grounds by Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam)].

Syl. pt. 12, *Brown II*, 229 W. Va. 382, 729 S.E.2d 217.

28

The circuit court's conclusion that the arbitration agreement is substantively unconscionable was based upon four different grounds: (1) it contains a class action waiver, (2) it restricts attorney's fees, (3) it lacks mutuality, and (4) it limits discovery. We will address each ground individually.

**i.**     **Class-Action Waiver.**  The circuit court concluded that the arbitration agreement is substantively unconscionable because it takes away from the Currys "the right to pursue class-wide claims." In reaching this conclusion, the circuit court found that the recovery sought by the Currys is relatively small and may deter them from pursuing a remedy if they are deprived of a class option and must bear the risk of substantial costs to vindicate their rights.[10]

Ocwen argues that it has been established in *State ex rel. Richmond American Homes of West Virginia, Inc. v. Sanders*, 228 W. Va. 125, 717 S.E.2d 909 (2011), and *State ex rel. AT & T Mobility, LLC v. Wilson*, 226 W. Va. 572, 703 S.E.2d 543 (2010), that the mere existence of a class action waiver in an arbitration agreement does not render the agreement unconscionable. In addition, Ocwen submitted, as supplemental authority, a recent decision by the United States Supreme Court in *American Express Co. v. Italian*

_____

[10]The circuit court observed that the Currys claim that Ocwen assessed them just over $1,100 in unlawful charges.

*Colors Restaurant*, ___ U.S. ___, 133 S. Ct. 2304, 86 L. Ed. 2d 417 (2013), wherein the Court upheld a class-action waiver in an arbitration agreement. Ocwen characterizes the Currys' arguments in this regard as mere speculation about the "risk" that arbitrating their claims might result in a less than full exercise of their state statutory rights. Ocwen further argues that the Currys' case is not a "small damages/high costs" case insofar as the damages they seek equal at least $19,510.94. Finally, Ocwen notes that under the arbitration agreement, the Currys are obligated to pay only $125 toward an initial filing fee. All other arbitration fees and costs are to be paid by Ocwen.[11]

The Currys simply argue that enforcing a class action waiver in an arbitration agreement may deter litigants from pursuing claims due to the high costs of obtaining a relatively small recovery. Thus, they contend, enforcing class action waivers would allow those committing illegal activity to remain "unpunished, undeterred, and unaccountable."[12]

---

[11]With respect to fees, the arbitration agreement provides:

> **FEES OF ARBITRATOR.** In any arbitration that pertains solely to the Loan, Borrower shall not be required to pay more than $125 in initial filing fees to the arbitrator. The Lender shall pay any balance of such initial fees. In addition, the Lender shall pay all other fees and costs of the arbitration. . . .

[12]*Quoting State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 563, 567 S.E.2d 265, 279 (2002).

This Court previously has considered arbitration agreements that contain class action waivers and found that the inclusion of such a waiver does not automatically render the arbitration agreement unenforceable. In *State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 228 W. Va. 125, 140, 717 S.E.2d 909, 924, we concluded that "the circuit court erred in its finding that the class action waiver rendered Richmond's arbitration provision unconscionable and void." In reaching this conclusion, we observed that

> [i]n [*AT & T Mobility LLC v. Concepcion*, ___ U.S. ___, 131 S. Ct. 1740, 179 L. Ed. 2d 742], the Supreme Court examined a California rule that, in certain circumstances, automatically invalidated an arbitration clause if it contained a class action waiver. The Supreme Court concluded that such a *per se* rule abrogating arbitration clauses impairs the rights of parties to contract and, if they so choose, arbitrate rather than litigate a particular dispute. The California rule was therefore found to be preempted by the FAA.

*State ex rel. Richmond Am. Homes*, 228 W. Va. at 139-140, 717 S.E.2d at 923-24 (footnote omitted). *See also State ex rel. AT & T Mobility, LLC v. Wilson*, 226 W. Va. 572, 579, 703 S.E.2d 543, 550 (2010) (per curiam) ("Standing alone, the lack of class action relief does not render an arbitration agreement unenforceable on grounds of unconscionability under this Court's decision in [*State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 567 S.E.2d 265 (2002)]."). More recently, the United States Supreme Court again addressed the impact of class action waivers on arbitration agreements and, based upon the right to contract, rejected the notion that parties may not agree to waive their right to a class action remedy. *See American Express Co. v. Italian Colors Rest.*, ___ U.S. ___, 133 S. Ct. 2304, 186 L. Ed. 2d

31

417.

Notably, in *Italian Colors*, the Supreme Court expressly considered "whether a contractual waiver of class arbitration is enforceable under the Federal Arbitration Act when the plaintiff's cost of individually arbitrating a federal statutory claim exceeds the potential recovery." ___ U.S. at ___, 133 S. Ct. at 2307, 186 L. Ed. 2d 417.[13]  In resolving this issue, the *Italian Colors* Court first observed that

> [The FAA] reflects the overarching principle that arbitration is a matter of contract. . . .  And consistent with [the FAA], courts must rigorously enforce arbitration agreements according to their terms, . . . including terms that specify with whom the parties choose to arbitrate their disputes, . . . and the rules under which that arbitration will be conducted . . . .  That holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command.

___ U.S. at ___, 133 S. Ct. at 2309, 186 L. Ed. 2d 417 (internal quotations and citations omitted).

The *Italian Colors* Court found no contrary congressional command that would require the rejection of the class-arbitration waiver.  In reaching this conclusion, the Court

---

[13]The plaintiffs in *Italian Colors* asserted that "the cost of an expert analysis necessary to prove the antitrust claims would be 'at least several hundred thousand dollars, and might exceed $1 million, while the maximum recovery for an individual plaintiff would be $12,850, or $38,549 when trebled.'" *American Exp. Co. v. Italian Colors Rest.*, ___ U.S. ___, ___, 133 S. Ct. 2304, 2308, 186 L. Ed. 2d 417 (2013).

declared:

> The parties here agreed to arbitrate pursuant to [the] "usual rule[]" [that litigation is conducted by and on behalf of the individual parties only] and it would be remarkable for a court to erase that expectation.
>
> Nor does congressional approval of [Fed. R. Civ. P.] Rule 23 establish an entitlement to class proceedings for the vindication of statutory rights. To begin with, it is likely that such an entitlement, invalidating private arbitration agreements denying class adjudication, would be an "abridg[ment]" or "modif[ication]" of a "substantive right" forbidden to the Rules, *see* 28 U.S.C. § 2072(b). But there is no evidence of such an entitlement in any event. The Rule imposes stringent requirements for certification that in practice exclude most claims. And we have specifically rejected the assertion that one of those requirements (the class-notice requirement) must be dispensed with because the "prohibitively high cost" of compliance would "frustrate [plaintiff's] attempt to vindicate the policies underlying the antitrust" laws. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 166-168, 175-176, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974). One might respond, perhaps, that federal law secures a nonwaivable opportunity to vindicate federal policies by satisfying the procedural strictures of Rule 23 or invoking some other informal class mechanism in arbitration. But we have already rejected that proposition in *AT&T Mobility*, [___] U.S., at ___, 131 S. Ct., at 1748 .

___ U.S. at ___, 133 S. Ct. at 2309-10, 186 L. Ed. 2d 417.

Having determined that there was no contrary congressional command that would require rejection of a class-arbitration waiver, the Court then considered whether any judge-made exception to the FAA would require such rejection. In this regard, the Court addressed whether the class-arbitration provision should be invalidated as preventing "the

33

'effective vindication' of a federal statutory right." *Italian Colors,* ___ U.S. at ___, 133

S. Ct. at 2310, 186 L. Ed. 2d 417.  The Court explained that

> [t]he "effective vindication" exception to which respondents allude originated as dictum in *Mitsubishi Motors* [*Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)], where we expressed a willingness to invalidate, on "public policy" grounds, arbitration agreements that "operat[e] . . . as a prospective waiver of a party's right to pursue statutory remedies." 473 U.S., at 637, n. 19, 105 S. Ct. 3346 (emphasis added). Dismissing concerns that the arbitral forum was inadequate, we said that "so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function." *Id*., at 637, 105 S. Ct. 3346.

*Italian Colors,* ___ U.S. at ___, 133 S. Ct. at 2310, 186 L. Ed. 2d 417.  The Court further

declared that

> the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy. . . . The class-action waiver merely limits arbitration to the two contracting parties.  It no more eliminates those parties' right to pursue their statutory remedy than did federal law before its adoption of the class action for legal relief in 1938, *see* Fed. Rule Civ. Proc. 23, 28 U.S.C., p. 864 (1938 ed., Supp V); 7A C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1752, p. 18 (3d ed. 2005).  Or, to put it differently, the individual suit that was considered adequate to assure "effective vindication" of a federal right before adoption of class-action procedures did not suddenly become "ineffective vindication" upon their adoption.
>
> A pair of our cases brings home the point.  In *Gilmer* [v. *Interstate/Johnson Lane Corp*., 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)], we had no qualms in enforcing a class waiver in an arbitration agreement even though the federal

statute at issue, the Age Discrimination in Employment Act, expressly permitted collective actions. We said that statutory permission did "'not mean that individual attempts at conciliation were intended to be barred.'" *Id*., at 32, 111 S. Ct. 1647. And in *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 115 S. Ct. 2322, 132 L. Ed.2d 462 (1995), we held that requiring arbitration in a foreign country was compatible with the federal Carriage of Goods by Sea Act. That legislation prohibited any agreement "'relieving'" or "'lessening'" the liability of a carrier for damaged goods, *id.*, at 530, 534, 115 S. Ct. 2322 (quoting 46 U.S.C. App. § 1303(8) (1988 ed.))—which is close to codification of an "effective vindication" exception. The Court rejected the argument that the "inconvenience and costs of proceeding" abroad "lessen[ed]" the defendants' liability, stating that "[i]t would be unwieldy and unsupported by the terms or policy of the statute to require courts to proceed case by case to tally the costs and burdens to particular plaintiffs in light of their means, the size of their claims, and the relative burden on the carrier." 515 U.S., at 532, 536, 115 S. Ct. 2322. Such a "tally[ing] [of] the costs and burdens" is precisely what the dissent would impose upon federal courts here.

Truth to tell, our decision in *AT&T Mobility* all but resolves this case. There we invalidated a law conditioning enforcement of arbitration on the availability of class procedure because that law "interfere[d] with fundamental attributes of arbitration." [___] U.S., at ___, 131 S. Ct., at 1748. "[T]he switch from bilateral to class arbitration," we said, "sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id*., at ___, 131 S. Ct., at 1751. We specifically rejected the argument that class arbitration was necessary to prosecute claims "that might otherwise slip through the legal system." *Id*., at ___, 131 S. Ct., at 1753.

The regime established by the Court of Appeals' decision would require—before a plaintiff can be held to contractually agreed bilateral arbitration—that a federal court determine (and

the parties litigate) the legal requirements for success on the merits claim-by-claim and theory-by-theory, the evidence necessary to meet those requirements, the cost of developing that evidence, and the damages that would be recovered in the event of success. Such a preliminary litigating hurdle would undoubtedly destroy the prospect of speedy resolution that arbitration in general and bilateral arbitration in particular was meant to secure. The FAA does not sanction such a judicially created superstructure.

___ U.S. at ___, 133 S. Ct. at 2311-12, 186 L. Ed. 2d 417 (internal citation and footnote omitted). Accordingly, the *Italian Colors* Court reversed the Court of Appeals' decision invalidating the arbitration agreement on the ground that it did not permit class arbitration of a federal-law claim.

Given the Supreme Court's analysis in *Italian Colors*, and this Court's prior decisions in *State ex rel. Richmond American Homes of West Virginia, Inc. v. Sanders*, 228 W. Va. 125, 717 S.E.2d 909, and *State ex rel. AT & T Mobility, LLC v. Wilson*, 226 W. Va. 572, 703 S.E.2d 543, we find the circuit court erred in concluding that the class action waiver rendered the instant arbitration agreement substantively unconscionable.

**ii.    Attorney's Fees.** The circuit court additionally found that the arbitration agreement was substantively unconscionable because it prevents the Currys from recovering reasonable attorney's fees under the West Virginia Consumer Credit and

Protection Act ("WVCCPA").[14]  The arbitration rider contains the following provision

regarding attorney's fees:

> In no event shall either party be responsible for any fees or expenses of any of the other party's attorneys, witnesses, or consultants, or any other expenses, for which such other party reasonably would have been expected to be liable had such other party initiated a suit in the courts of the jurisdiction in which the Borrower resides regarding a similar dispute.

Ocwen argues that the restriction on attorney's fees is not unconscionable and,

in the alternative, if it is determined to be unconscionable, then it is severable.  Ocwen

submits that the availability of actual damages and statutory penalties under the WVCCPA,

and the fee-shifting provisions contained in the arbitration agreement,[15] provide the Currys

with sufficient incentive and opportunity to vindicate their statutory rights in arbitration.

---

[14]The WVCCPA provides that:

> [i]n any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer.  On a finding by the court that a claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice was brought in bad faith and for the purposes of harassment, the court may award to the defendant reasonable attorney fees.

W. Va. Code, § 46A-5-104 (1994) (Repl. Vol. 2006).

[15]*See* note 11, *supra*, for the arbitration agreement's fee provision.

Moreover, Ocwen points out that the restriction on attorney's fees is not unfairly one-sided and does not support a "presumption of unconscionability," because the provision impacts the Currys and Ocwen equally. Ocwen further notes that the WVCCPA does not guarantee an award of attorney's fees, but merely *permits* a trier of fact to grant reasonable attorney's fees. Finally, Ocwen contends that if the attorney's fee provision is deemed to be unconscionable, the provision is severable from the arbitration agreement because the deed of trust, into which the arbitration agreement is incorporated, contains the following severability clause: "In the event that any provision or clause of the Security Instrument . . . conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument . . . which can be given effect without the conflicting provision." Ocwen complains that the circuit court failed to address the severability clause or Ocwen's argument regarding the same.

The Currys contend that they are entitled to seek attorney's fees under the WVCCPA; therefore, the arbitration agreement's provision restricting them from obtaining an award of attorney's fees deprives them of that right. Furthermore, the Currys contend that the circuit court correctly found that "the dual effect of the arbitration agreement's class-action waiver and its disclaimer of any liability for attorney's fees is to prevent consumers such as the Plaintiffs from effectively vindicating their statutory rights."[16]

---

[16]Insofar as we have held in this opinion that a class action waiver does not
(continued...)

Notably, under the circumstances presented in this case, the arbitration agreement does not deprive the Currys of a mandatory right or entitlement to *receive* attorney's fees should they prevail in their WVCCPA claim. This is because the WVCCPA merely grants the court discretion to award attorney's fees, it does not mandate such an award. Furthermore, the court's discretion in this regard extends to granting attorney's fees to either a plaintiff or a defendant under the proper circumstances.[17] Additionally, we note that the arbitration provision mutually applies to both parties by specifying that neither party shall be responsible for the other party's attorney's fees. In other words, the arbitration agreement simply implements the traditional American rule, which states that "'[a]s a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement.' Syl. Pt. 2, *Sally–Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246 (1986)." Syl. pt. 2, *State ex rel. Hicks v. Bailey*, 227 W. Va. 448, 711 S.E.2d 270 (2011). Finally, as discussed above in connection with our discussion of procedural unconscionability, we note that the contract was not a contract of adhesion, as demonstrated by the conspicuous statement, in all capital letters above the signature line, advising the Currys that the arbitration agreement was voluntary and

---

[16](...continued)
render a contract unconscionable, we summarily reject this portion of the Currys' argument.

[17]*See supra* note 14 for language of attorney's fees provision of the WVCCPA.

39

the Lender would not refuse their loan should they choose to reject arbitration.[18]

Under these circumstances, where the contractual provision does not deprive a party of a mandatory right to receive attorney's fees, where the provision applies equally to both parties in making them responsible for their own attorney's fees, and where the contract was not one of adhesion, we decline to find the requirement that neither party be responsible for the other's attorney's fees to be unconscionable.[19]

---

[18]*See* Section B.1. *supra*.

[19]In reaching this conclusion, we expressly decline to address the circumstance where a statutorily provided *mandatory right* to attorney's fees is abrogated by a contract provision. As the Currys point out, in dicta in the case of *State ex rel. Dunlap v. Berger*, this Court commented that

> We do observe that, entirely independent of the arbitration issue, a provision in a contract of adhesion that would operate to restrict the availability of an award of attorney fees to less than that provided for in applicable law would, under our decision today, be presumptively unconscionable. For example, if Friedman's purchase and financing agreement had stated: "attorney fees may not be awarded to the Buyer in a dispute with the Seller in any forum," that would be a presumptively unconscionable provision, if the dispute were one where a prevailing party *is entitled to attorney fees* under state laws for the benefit and protection of the public.

211 W. Va. 549, 567 n.15, 567 S.E.2d 265, 283 n.15 (2002) (emphasis added). Additionally, we note that there appears to be a split of authority regarding the issue of whether a contract term restricting the award of attorney's fees is unconscionable. *Compare Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 230-31 (3rd Cir. 2012) (stating "[p]rovisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restrictions on attorneys' fees conflict with federal statutes

(continued...)

**iii.** **Mutuality.** The arbitration agreement contained the following provision excluding some of Ocwen's claims from arbitration:

EXCLUSION FROM ARBITRATION. This agreement shall not limit the right of lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise the other Remedies described in this Security Instrument before, during, or after any arbitration, including the right to foreclose against or sell the Property; (b) exercise the rights set forth in the Uniform Covenant labeled "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" contained in this Security Instrument, or (c) exercise of the right under the terms of this security Instrument to require payment in full of the indebtedness upon a transfer of the Property or a beneficial interest therein. Should borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, without asserting any counterclaim or seeking affirmative relief against Lender, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration in accordance with the section entitled "Arbitration of Disputes." Any dispute that could otherwise have been asserted as a counterclaim or grounds for relief in such a judicial proceeding shall be resolved solely in accordance with the section entitled "Arbitration of Disputes."

---

[19](...continued)
providing fee-shifting as a remedy."), *with James C. Justice Companies, Inc. v. Deere & Co.*, No. 5:06-cv-00287, 2008 WL 828923, at *4 & *5 (S.D.W. Va., March 27, 2008) (observing "15 U.S.C. § 15(a) provides, in relevant part, that a party '*shall* recover threefold the damages by him sustained and the cost of suit, including a reasonable attorney's fee.' Thus, the Dealership Agreement and 15 U.S.C. § 15 are in conflict[,] and concluding that plaintiff "has offered no evidence that paying its own attorney's fees and costs in arbitration would prevent it from effectively vindicating its rights under the Sherman Act. Therefore, [this] Court cannot conclude that the Dealership Agreement's limitation on attorney's fees and costs is inconsistent with the policies of the Sherman Act." (emphasis added)).

Based upon the foregoing provision, the circuit court found that

> the [arbitration] agreement lacks mutuality, the "paramount consideration" in assessing substantive unconscionability. *Richmond Am. Homes*, 717 S.E.2d at 921. In particular, the arbitration agreement confines all of the plaintiffs' potential claims arising from the loan to arbitration. The Plaintiffs' lender, however, excluded many of its most important remedies from arbitration, including the right to accelerate payments, to foreclose, and to exercise the nonjudicial remedies outlined in the parties' note. Moreover, if the lender brings a judicial proceeding to exercise the rights it excluded from arbitration, the Plaintiffs are prevented from asserting any counterclaim or seeking any other affirmative relief and instead must proceed to arbitration. In other words, the agreement vests the Plaintiffs' lender with a significant amount of discretion and then excludes many of its most important remedies from arbitration. All of the Plaintiffs' rights and remedies, however, are subject to mandatory arbitration.

Ocwen contends that the circuit court erred in finding the arbitration agreement lacks mutuality and characterizes it as an enforceable bilateral agreement. According to Ocwen, West Virginia law does not require complete mutuality. Instead, the law requires only that "[a]greements to arbitrate must contain at least a modicum of bilaterality."[20] Finally, Ocwen asserts that the limited exceptions contained in the arbitration agreement to allow it to accelerate payments and foreclose per applicable state law do not render the agreement unfairly one-sided or unconscionable.

---

[20]*Quoting State ex rel. Richmond Am. Homes of West Virginia, Inc. v. Sanders,* 228 W. Va. 125, 137, 717 S.E.2d 909, 921 (2011) (internal quotations and additional citations omitted).

42

The Currys argue that the arbitration agreement lacks mutuality because the lender carved out its most important remedies from arbitration, including the right to accelerate payments and foreclose, while confining all of their potential claims to arbitration.

This Court has recently observed that "[s]ome courts suggest that mutuality of obligation is the locus around which substantive unconscionability analysis revolves. In assessing substantive unconscionability, the paramount consideration is mutuality. Agreements to arbitrate must contain at least a modicum of bilaterality to avoid unconscionability." *State ex rel. Richmond Am. Homes of West Virginia, Inc. v. Sanders*, 228 W. Va. 125, 137, 717 S.E.2d 909, 921 (internal quotations, citations and footnotes omitted). Accordingly, we have held that

> In assessing whether a contract provision is substantively unconscionable, a court may consider whether the provision lacks mutuality of obligation. If a provision creates a disparity in the rights of the contracting parties such that it is one-sided and unreasonably favorable to one party, then a court may find the provision is substantively unconscionable.

Syl. pt. 10, *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012).

Nevertheless, we have cautioned that a lack of mutuality does not absolutely render a contract unconscionable by "emphasiz[ing] that a one-sided contract provision may not be unconscionable under the facts of all cases. 'The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances

43

of a particular case.'" *Dan Ryan Builders*, 230 W. Va. 281, ___, 737 S.E.2d 550, 559-60 (*quoting* Syl. pt. 12, *in part*, *Brown I*, 228 W. Va. 646, 724 S.E.2d 250). Thus, we have held that "[a] court in its equity powers is charged with the discretion to determine, on a case-by-case basis, whether a contract provision is so harsh and overly unfair that it should not be enforced under the doctrine of unconscionability." Syl. pt. 9, *Dan Ryan Builders,* 230 W. Va. 281, 737 S.E.2d 550.

In this case, the exclusions from arbitration reserved by Ocwen grants it the ability to utilize the court system to protect its security interest in the Currys' home. Other courts addressing such clauses have found that they are not unconscionable. For example, in *Baker v. Green Tree Servicing LLC*, No. 5:09-cv-00332, 2010 WL 1404088 (S.D. W. Va. Mar. 31, 2010), the district court upheld an arbitration agreement based, in part, upon its finding that

> [t]he lender's ability to foreclose or repossess a home when the buyer defaults is not a new or additional remedy given to the lender by the contract. Instead, it is a remedy independently available to the lender by virtue of law, and the contract does no more than preserve that right . . . .

*Id.* at 4. Similarly, in *Miller v. Equifirst Corp. of WV*, No. 2:00-0335, 2006 WL 2571634 (S.D. W. Va. Sept. 5, 2006), the district court upheld an arbitration agreement that reserved the right of the lender to seek redress of certain claims in court, including foreclosure, while

44

requiring the borrower to arbitrate.[21]  In deciding to uphold the arbitration provision, the

*Miller* court observed that "[t]he exception for proceedings related to foreclosure is one that

is not only common in arbitration agreements but quite necessary in order to effectuate

foreclosure and a retaking of the subject property by lawful processes, where needed, without

breach of the peace." *Miller*, No. 2:00-0335, 2006 WL 2571634, at *11.  Other courts have

reached similar conclusions.  *See Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862,

872 (D. Or. 2002) ("The claims that defendant may litigate are basically claims asserting its

security interest.  These claims are heavily regulated by statute, allowing for streamlined

procedures and effective protections for both sides.  It does not strike this court as

unreasonable, much less oppressive, to forego arbitration of such claims.  Therefore, the

Agreement to Arbitrate is not rendered unconscionable simply because defendant is not

required to arbitrate all claims."); *Conseco Fin. Servicing Corp. v. Wilder*, 47 S.W.3d 335,

---

[21]The exclusion clause at issue stated:

> EXCLUSIONS FROM ARBITRATION. This arbitration
> agreement shall not apply to rights of [sic; or] obligations under
> the loan documents that allow the Lender to foreclose or
> otherwise take possession of property securing the loan,
> including repossession, foreclosure or unlawful detainer.  Nor
> shall it be construed to prevent any party's use of bankruptcy or
> judicial foreclosure.  No provision of this agreement shall limit
> the right of the Borrower to exercise Borrower's rights under the
> Uniform Covenant labeled "Borrower's Right to Reinstate".
> Subject to these limitations, this arbitration agreement will
> survive the pay-off of the loan.

*Miller v. Equifirst Corp. of WV*, No. 2:00-0335, 2006 WL 2571634, at *9 (S.D. W. Va. Sept. 5, 2006).

343 (Ky. Ct. App. 2001) (concluding that exceptions in arbitration agreement allowing lender to litigate enforcement of its security interest "are not unreasonable. Arbitration is meant to provide for expedited resolution of disputes, but the claims the agreement permits [lender] to litigate–basically claims asserting its security interest–may be litigated expeditiously. Such claims have come to be heavily regulated by statute, allowing for streamlined procedures and effective protections for both sides. It does not strike us as unreasonable, much less oppressive, to forego arbitration of such claims." (footnote omitted)); *Walther v. Sovereign Bank*, 386 Md. 412, 436, 872 A.2d 735, 749 (2005) ("We agree with these other jurisdictions and their findings that the act of a mortgage lender in providing certain exceptions for itself in the arbitration agreement, such as the ability to pursue foreclosure proceedings in a judicial forum, does not in and of itself make the arbitration agreement unconscionable where the mortgage-debtor/borrower is not provided with identical exceptions to the arbitration agreement."); *Lackey v. Green Tree Fin. Corp*., 330 S.C. 388, 401, 498 S.E.2d 898, 905 (S.C. Ct. App. 1998) ("Green Tree retained the option to use judicial or non-judicial relief to enforce a security agreement relating to the manufactured home, to enforce the monetary obligations secured by the manufactured home, or to foreclose on the manufactured home. Secured transactions allow lenders to take greater risks because their ability to protect a loan is enhanced by the legal right to recover and sell the collateral in the event of default. Judicial remedies for the recovery of property, such as the replevin action, and the foreclosure action, provide specific procedures for protection of collateral and

46

the parties during the pendency of the proceedings. These protections relate to both parties, and are facilitated by the enforcement procedures specified in the law. Thus, we conclude this clause does bear a reasonable relationship to the business risks." (footnote omitted)).

Finally, it is noteworthy that Ocwen's exercise of any of its rights under the "Exclusion from Arbitration" clause is tempered by the portion of that clause allowing the Currys to compel Ocwen to arbitrate:

> Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, without asserting any counterclaim or seeking affirmative relief against Lender, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration in accordance with the section entitled "Arbitration of Disputes."

Based upon the foregoing discussion, we conclude that the circuit court erred in relying upon the "Exclusion from Arbitration" provision as a basis for finding the arbitration agreement to be unconscionable.

iv. **Limitation on Discovery.** The arbitration agreement included the following notice in all capital letters above the signature line:

> NOTICE: BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS DESCRIBED IN THE

47

"ARBITRATION OF DISPUTES" SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL. *DISCOVERY IN THE ARBITRATION PROCEEDINGS MAY BE LIMITED BY THE RULES OF PROCEDURE OF THE SELECTED ARBITRATION SERVICE PROVIDER.*

(Emphasis added). This notice was one of the grounds upon which the circuit court relied in finding substantive unconscionability, as evidenced by the court's comment that "[t]he agreement also informs the Plaintiffs that the rules of procedure applicable to arbitration may prevent them from conducting meaningful and full discovery."

Ocwen argues that the arbitration agreement does not expressly limit the discovery available to either party in arbitration. Rather, the agreement provides that discovery may be limited by the applicable rules of procedure. Ocwen submits that it is well-settled that discovery limits in arbitration do not support a finding of substantive unconscionability. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 1655, 114 L. Ed. 2d 26 (1991) ("by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d 444 (1985))). The Currys do not address this issue.

Initially, we note that the extent to which discovery may or may not be limited is unclear from the arbitration agreement, which merely clarifies that the extent of discovery will be governed by the arbitration forum selected. In addition, there has been no claim made that any limitation on discovery would apply solely to the Currys. Thus, we may presume that any such limitation would apply equally to Ocwen and the Currys. Finally, assuming that discovery would, in fact, be limited by the arbitration forum selected, we note that several courts have enforced such limitations. *See In re Cotton Yarn Antitrust Litig*., 505 F.3d 274, 286-87 (4th Cir. 2007) ("While discovery generally is more limited in arbitration than in litigation, that fact is simply one aspect of the trade-off between the 'procedures and opportunity for review of the courtroom [and] the simplicity, informality, and expedition of arbitration' that is inherent in every agreement to arbitrate. . . . [T]he plaintiffs bear the burden of showing that the terms of the arbitration agreement would preclude them from effectively vindicating their statutory rights. . . . The plaintiffs' arguments about the discovery limitations attendant to arbitration proceedings fall well short of satisfying their burden." (quoting *Mitsubishi Motors Corp.*)); *Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 673 (6th Cir. 2003) ("In this case, although Morrison has asserted that the discovery allowed under the Circuit City arbitration rules is more limited than that generally allowed in federal district court, she has failed even to attempt to show that such restrictions prevent either her or any other claimants from presenting their claims."); *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp.2d 825, 829-30 (N.D. Cal. 2007) ("[I]n *Gilmer* [v.

49

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)], the Supreme Court indicated that a challenge to arbitration on the basis that it provides for only limited discovery is not likely to succeed. . . . In the instant case, [the plaintiff] has not adequately demonstrated why arbitration under the AAA rules would deny it a fair opportunity to present its claims."); *Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App.4th 677, 689-90, 99 Cal. Rptr. 2d 809, 818-19 (Cal. Ct. App. 2000) ("Limited discovery rights are the hallmark of arbitration. . . . The fact that an arbitration may limit a party's discovery rights is not "substantive unconscionability." If it were, every arbitration clause would be subject to an unconscionability challenge on that ground." (footnote omitted); *In re Poly-America, L.P.*, 262 S.W.3d 337, 358 (Tex. 2008) (declining to find limitation on discovery *per se* unconscionable and commenting "at this point in the proceedings, without knowing what the particular claims and defenses–and the evidence needed to prove them–will be, discerning the discovery limitations' potential preclusive

effect is largely speculative. The assessment of particular discovery needs in a given case and, in turn, the enforceability of limitations thereon, is a determination we believe best suited to the arbitrator as the case unfolds."); *Cottonwood Fin., Ltd. v. Estes*, 339 Wis. 2d 472, 485, 810 N.W.2d 852, 859 (Wis. Ct. App. 2012) ("Any limits will apply equally to both parties. Further, the arbitration provision prohibits the application of any rules of evidence, which simplifies and expands the presentation of evidence, acting as a counterweight to any

50

limits on discovery. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991).").

In light of the foregoing discussion, and to the extent that the United States Supreme Court already has acknowledged that the simplified procedures sought in arbitration necessarily limit the formalities of discovery, we find no difficulty in concluding that, under the facts herein presented, the circuit court erred in finding the arbitration agreement to be unconscionable on this ground.

## IV.

## CONCLUSION

For the reasons explained in the body of this opinion, we find the circuit court erred finding the arbitration agreement to be unenforceable and in denying Ocwen's motion to compel arbitration. Accordingly, we grant the requested writ of prohibition and direct the circuit court to enter an order compelling arbitration.

Writ Granted.